UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re 2U, Inc. Securities Class Action | No. 1:19-cv-07390-RA<br><br>CLASS ACTION |

**REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF FIYYAZ PIRANI FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION**

Movant Pirani[1] respectfully submits this reply memorandum of law in further support of his motion for appointment as Lead Plaintiff and approval of his selection of Pomerantz as Lead Counsel (Dkt. No. 39); and (2) in opposition to the competing motion of Chicago Teachers (Dkt. No. 21).

## PRELIMINARY STATEMENT

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). This presumption can **only** be rebutted upon proof that the movant with the largest financial interest is atypical or inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Mere speculation or innuendo is insufficient to rebut this presumption. *See*, *e.g.*, *Foley v. Transocean, Ltd.*, 272 F.R.D. 126, 131-33 (S.D.N.Y. 2011) (finding that the presumption "may only be rebutted upon 'proof'" of inadequacy or atypicality and rejecting challenge founded on speculation); *In re MGT Capital Invs., Inc.*, 16 Civ. 7415 (NRB) *et al.*, 2017 U.S. Dist. LEXIS 59130, at *9-*10 (S.D.N.Y. Apr. 11, 2017) (rejecting "attempt to find something nefarious" in order "to discredit" a movant's certification); *Kaplan v. Gelfond*, 240 F.R.D. 88, 95-96 (S.D.N.Y. 2007) (rejecting "inconclusive" argument proffered by competing movant in attempt to disqualify presumptive lead plaintiff).

Here, Pirani is clearly the movant with the greatest financial interest in the subject matter of this litigation, with ***losses of nearly $3 million*** incurred as a result of the alleged fraud. Recognizing as much, seven of the other eight movants that initially filed motions for Lead Plaintiff appointment in this action subsequently abandoned those motions. Only Chicago Teachers continues to contest Pirani's appointment.

---

[1] All capitalized terms herein are defined in Pirani's moving or opposition briefs, unless otherwise indicated. *See* Dkt. Nos. 41, 54.

1

Having incurred a loss of only $2.14 million in connection with the alleged fraud at issue in this litigation—roughly $830,000 less than the loss incurred by Pirani—Chicago Teachers can only resort to baseless attacks on Pirani's adequacy in a meritless effort to disqualify him from consideration.

***First***, Chicago Teachers asserts that Pirani's Certification (Dkt. No. 43-3) renders him inadequate because it was executed prior to the filing of the first action against 2U. On the basis of this single, innocuous fact, Chicago Teachers speculates that Pirani is unaware of the pendency of his motion, that the transaction history appended to his Certification (*id.* at *4) is inaccurate, and that Pirani's credibility, and thus his adequacy as a class representative, are thereby fatally undermined. Yet Chicago Teachers' wild speculation is squarely at odds with the facts. Pirani has provided a sworn Declaration, submitted herewith, attesting, *inter alia*, that Pirani reviewed a draft complaint prior to the filing of the first action against 2U; that Pirani's counsel has kept him informed throughout the litigation of all significant developments; that Pirani authorized the filing of his Lead Plaintiff Motion; and that the transaction history appended to Pirani's Certification accurately reflects his Class Period transactions in 2U securities. *See* Reply Declaration of Jeremy A. Lieberman in Further Support of Motion ("Lieberman Reply Decl."), Ex. A ¶¶ 4-6.

***Second***, Chicago Teachers asserts that "Pirani's Class Period trading pattern independently warrants denial of his motion[,]" citing the fact that certain of Pirani's Class Period purchases of 2U securities occurred after the partial corrective disclosure of May 7, 2019. Dkt. No. 57 at 3. For this reason, Chicago Teachers asserts that Pirani is atypical and/or subject to a unique defense such that his motion must be denied. However, purchasing securities after a partial corrective disclosure does not categorically disqualify Pirani from serving as Lead

Plaintiff as Chicago Teachers asserts. Rather, courts routinely appoint such investors as lead plaintiffs in PSLRA actions. *See*, *e.g.*, *Menaldi v. Och-Ziff Capital Mgmt. Group LLC*, 328 F.R.D. 86, 93 (S.D.N.Y. 2018); *Pirnik v. Fiat Chrysler Autos., N.V.*, 327 F.R.D. 38, 43 (S.D.N.Y. 2018); *In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 360 (S.D.N.Y. 2016).

Finally, in support of its own appointment as Lead Plaintiff, Chicago Teachers argues that the PSLRA expresses a preference for institutional investors. Dkt. No. 57 at 13-14. This is demonstrably false. The clear language of the PSLRA does not even mention, much less privilege, institutional investors. *See In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 04-cv-0265, 2004 U.S. Dist. LEXIS 10200, at *7 (E.D. Pa. June 3, 2004).

Accordingly, for the reasons set forth herein and in his moving and opposition briefs (Dkt. Nos. 41, 54), Pirani respectfully requests that the Court grant his motion in its entirety and deny the competing motion of Chicago Teachers.

**ARGUMENT**

**I. PIRANI SATISFIES THE TYPICALITY AND ADEQUACY REQUIREMENTS OF RULE 23**

**A. Pirani's Certification Is Not Evidence Of His Inadequacy To Serve As Lead Plaintiff**

Chicago Teachers asserts that Pirani's Certification (Dkt. No. 43-3) constitutes "proof of [his] inadequacy" to serve as Lead Plaintiff. Dkt. No. 57 at 5. Specifically, Chicago Teachers notes that Pirani's Certification was executed on August 6, 2019, the day before the first of the subsequently consolidated actions against 2U was filed.[2] On this purported basis alone, Chicago Teachers leaps to the following highly speculative conclusions: that Pirani is unaware that a Lead Plaintiff motion was filed on his behalf; that the transaction history appended to Pirani's

---

[2] The first of the related actions on behalf of 2U shareholders consolidated herein was filed on August 7, 2019 under style of *Harper v. 2U, Inc. et al.*, 1:19-cv-07390 (the "*Harper* Action").

3

Certification (Dkt. No. 43-3 at *4) is inaccurate; that Pirani is incapable of supervising his chosen counsel; and that Pirani is therefore inadequate to represent the class. Dkt. No. 57 at 5-6.

Chicago Teachers' self-serving conjecture is at odds with the facts. Just one day prior to the filing of the *Harper* Action, Pirani reviewed a draft complaint—that is, a complaint that had not been filed—against 2U. *See* Lieberman Reply Decl., Ex. A ¶ 4. Pirani's Certification did not attest to having reviewed a filed complaint, there is no requirement that a plaintiff certify to having reviewed a filed complaint in PSLRA actions—obviously, as such a requirement would have the absurd and circular effect of preventing the filing of *any* initial complaint—and there is simply no significance to the fact that the complaint that Pirani reviewed was a draft. Moreover, as Pirani has attested, the schedule of transactions appended to his Certification fully and accurately reflects his transactions in 2U securities during the operative Class Period in this litigation—*i.e.*, between February 26, 2018 and July 30, 2019, both dates inclusive. *Id.* ¶ 5.

The suggestion that Pirani was unaware that his counsel had filed a motion seeking his appointment as Lead Plaintiff and is generally incapable of supervising his counsel is false. Pirani has in fact remained an active and informed litigant throughout this action, and his counsel has kept him apprised of all significant developments. *Id.* ¶ 6. Prior to the filing of his Lead Plaintiff motion, he discussed serving as Lead Plaintiff with counsel, understood the responsibilities of a Lead Plaintiff, and authorized the filing of his motion. *Id.* Since the filing of his Lead Plaintiff motion Pirani has continued to communicate with his counsel regarding, *inter alia*, the procedural posture of this litigation and the status of his pending motion. *Id.*

Pirani's conduct in another PSLRA action, *Dennee v. Slack Technologies, Inc.*, 3:19-cv-05857 (the "*Slack* Action"), further demonstrates his adequacy to serve as Lead Plaintiff. On November 19, 2019, Pirani filed a motion seeking appointment as lead plaintiff in the *Slack*

4

Action, and submitted a Certification that, *inter alia*, informed the court of his pending Lead Plaintiff motion in this action. *See* Lieberman Decl., Ex. B ¶ 6. This further refutes the suggestion that Pirani has been unaware of the filing of his Lead Plaintiff motion. Additionally, in the *Slack* Action, Pirani retained a firm other than Pomerantz, his selection of Lead Counsel in this action, to represent him. This further demonstrates that Pirani is capable of independently evaluating different law firms in selecting counsel, and refutes the suggestion that Pirani's attorneys, rather than Pirani, "control the litigation" in which Pirani is involved. *Nakamura v. BRF S.A.*, No. 18-CV-2214 (PKC), 2018 U.S. Dist. LEXIS 110187, at *4 (S.D.N.Y. July 2, 2018).

Finally, Pirani's own background provides no reason to doubt his ability to oversee this litigation on behalf of the Class. Pirani is a technology entrepreneur and has co-founded and served as an executive of several companies. Lieberman Decl., Ex. A ¶ 2. He is currently the Chief Executive Officer of HealthLabs.com. *Id.* He has more than ten years' experience investing in the securities markets. *Id.* In sum, Pirani's background evinces his sophistication, leadership experience, responsibility, and proactiveness, all of which qualities would undoubtedly benefit the Class if the Court were to appoint him as Lead Plaintiff. Moreover, Pirani has attested that he understands the specific responsibilities of a Lead Plaintiff and stands ready to fulfill those responsibilities on behalf of the Class. *Id.* ¶ 7.

### B. Pirani's Trading Pattern Is Not Disqualifying

Chicago Teachers also asserts that Pirani's purchase of 49,614 shares of 2U securities after a partial revelation of the alleged fraud on May 7, 2019—the date on which the Company announced its lowered revenue guidance for fiscal year 2019, citing declining enrollments in some of its largest graduate programs—disqualifies Pirani from appointment as Lead Plaintiff

because it "exposes him to reliance-based defenses" and "renders him atypical and unfit to serve as lead plaintiff." Dkt. No. 57 at 8.

Not so. Courts routinely find lead plaintiff movants to be typical and adequate within the meaning of Rule 23, and not subject to unique defenses, even when the movants continued to purchase the securities at issue after a partial—or even full—disclosure of the alleged fraud. *See*, *e.g.*, *Och-Ziff Capital Mgmt.*, 328 F.R.D. at 93 ("the fact that [movant] bought more stock even after [a partial corrective disclosure] does not create a conflict."); *Fiat Chrysler*, 327 F.R.D. at 43 ("[T]he fact that a putative class representative purchased additional shares in reliance on the integrity of the market after the disclosure of corrective information has no bearing on whether or not the representative relied on the integrity of the market during the class period[ for purposes of Rule 23(a) typicality.]" (internal quotation marks and citations omitted)); *Petrobras*, 312 F.R.D. at 360 (finding lead plaintiff typical and adequate despite having bought after a partial corrective disclosure).

Where, as here, a fraud is alleged to have continued after an initial corrective disclosure—*i.e.*, where the securities at issue are alleged to have continued to trade at artificially inflated prices until the final, Class Period-ending corrective disclosure—the plaintiff's claims "ar[i]se from 'the same set of events and course of conduct' that gave rise to the other class members' claims." *In re Connetics*, 257 F.R.D. 572, 577 (N.D. Cal. 2009) (quoting *In re Providian Fin. Corp. Sec. Litig.*, No. C 01-03952 CRB, 2004 U.S. Dist. LEXIS 31107, at *16 (N.D. Cal. Jan. 15, 2004)). Pirani's purchases of 2U securities after the partial corrective disclosure of May 7, 2019 were at inflated prices, as were Pirani's and other investors' purchases prior to May 7, because the full truth of 2U's alleged malfeasance did not reach the market until July 30—84 days *after* May 7. Moreover, during those 84 days, other Class members

undoubtedly also purchased 2U securities, meaning that Pirani is far from "unique" in that regard. *See Connetics*, 257 F.R.D. 576-77 ("Defendants do not explain why the timing of lead plaintiff's purchases automatically make it unique—other class members may also have purchased Connetics stock after partial adverse disclosures by the company."). Pirani is thus typical of the Class, and not subject to any unique defense.

Accepting Chicago Teachers' argument that Pirani is unable to pursue fraud claims against the Defendants due to the timing of certain of his purchases amounts to determining that any Class member who purchased 2U securities after the partial corrective disclosure of May 7, 2019 is unable to recover their losses in this litigation. For all intents and purposes, this would effectively truncate the Class Period by 84 days, or roughly 16% of its entire duration, at the very outset of this litigation, thereby excluding a significant number of potential Class members. "[I]t is unclear why a plaintiff would argue for . . . reducing the class size and limiting the potential amount of damages, ***unless it was in the best interest of that particular plaintiff only***." *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *6 (N.D. Cal. Aug. 22, 2008) (emphasis added). Chicago Teachers' willingness to take such a position in order to secure a leadership role in this action calls into question its own fitness to serve as Lead Plaintiff in this action, a fiduciary role that would require Chicago Teachers to place the Class's interests ahead of its own.

## II. THE PSLRA DOES NOT PRIVILEGE INSTITUTIONAL INVESTORS OVER INDIVIDUALS

Contrary to Chicago Teachers' assertions, Pirani respectfully submits that the clear language of the PSLRA does not mention, much less privilege, institutional investors. *See In re Am. Bus. Fin. Servs.*, 2004 U.S. Dist. LEXIS 10200, at *7 ("The language of the [PSLRA] does not require that institutional investors take precedence over individual plaintiffs who are

otherwise qualified to serve in a lead capacity."). While there is no dispute in the congressional record that Congress hoped that institutional investors would seek appointment as lead plaintiffs, Congress did not make such an aspiration a basis in the text of the PSLRA to deny lead plaintiff status to individuals that had larger losses than institutional investors. *See In re Texlon Corp. Secs. Litig.*, 67 F. Supp. 2d 803, 820-22 (N.D. Ohio 1999) ("If that were the case, Congress would have simply provided that institutional investors are presumptively the most adequate plaintiffs regardless of the size of financial loss and saved the Court from the need to engage in the very analysis it undertakes here.") (citations omitted); *Reiger v. Altris Software, Inc.*, 98-cv-0528 (JFS), 1998 U.S. Dist. LEXIS 14705, at *14 (S.D. Cal. Sept. 11, 1998) ("If Congress had intended to restrict the application of the rebuttable presumption to institutional investors, it could have stated such in the statute."). In sum, there is no basis in either the clear text of the PSLRA or in federal securities jurisprudence to appoint Chicago Teachers as Lead Plaintiff rather than Pirani simply because it is an institutional investor.

## CONCLUSION

For the foregoing reasons, Pirani respectfully requests that the Court grant his motion in all respects and deny the competing motion of Chicago Teachers.

Dated:  November 22, 2019               Respectfully submitted,

                                        POMERANTZ LLP

                                        */s/ Jeremy A. Lieberman*
                                        Jeremy A. Lieberman
                                        J. Alexander Hood II
                                        Jonathan D. Lindenfeld
                                        600 Third Avenue, 20th Floor
                                        New York, NY 10016
                                        Telephone: (212) 661-1100
                                        Facsimile: (212) 661-8665
                                        Email: jalieberman@pomlaw.com
                                        Email: ahood@pomlaw.com

Email: jlindenfeld@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Counsel for Lead Plaintiff Movant Fiyyaz Pirani and Proposed Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
Email: peretz@bgandg.com

*Additional Counsel for Lead Plaintiff Movant Fiyyaz Pirani*